IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RICKY OLSON,

                Petitioner,                OPINION AND ORDER

v.

                                               20-cv-455-wmc
                                               16-cr-001-wmc

UNITED STATES OF AMERICA,

                Defendant.

Under 28 U.S.C. § 2255, petitioner Ricky Olson filed a motion to vacate his conviction and sentence. In 2016, a grand jury charged Olson with: knowingly producing (Count 1), receiving (Count 2), and possessing (Count 3) visual depictions of a minor engaged in sexually explicit conduct and depicting the same in violation of 18 U.S.C. § 2252(a)(2), (2), and (4)(B); knowingly attempting to use a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct in violation of 18 U.S.C. § 2251(a)(1) and (e) (Count 4); and knowingly attempting to transfer obscene material to a person he knew was under 16 years old in violation of 18 U.S.C. § 1470 (Count 5). Olson pleaded guilty, and Judge Crabb sentenced him. However, the Court of Appeals for the Seventh Circuit vacated and remanded that judgment, holding that Olson did not voluntarily and intelligently enter into the plea agreement because of deficiencies during the plea colloquy.

After remand, this case was randomly reassigned to me, and in January 2019, Olson and the government entered into another plea agreement as to Count 2 of the indictment, which the court accepted. The court then sentenced Olson to 156 months of incarceration

to be followed by 20 years of supervised release. However, Olson again contends that his attorney was deficient in several respects related to the new plea and sentencing phases. Still, he has cited no legal authorities supporting his theories of deficient performance; nor has he shown that the plea agreement his counsel negotiated was inconsistent with diligent and thoughtful representation. Accordingly, Olson has fallen well short of meeting the demanding, ineffective assistance-of-counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1994). Thus, Olson's motion to vacate will be denied, and this action will be dismissed with no certificate of appealability to issue.

## BACKGROUND[1]

### A. Plea Agreement and Hearing

Olson pleaded guilty to Count 2 of the five counts originally charged, which accused him of receiving visual depictions of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). As a result, Olson faced a statutory, mandatory minimum five-year term of incarceration with the maximum penalty for the charge being 20 years of incarceration. In the plea agreement, Olson also stipulated to facts supporting his commission of the offenses alleged in Counts 1 and 5 of the indictment, and he further agreed that the sentencing guidelines would be calculated as if he had been convicted of Counts 1, 2 and 5. Olson also waived his right to appeal his sentence if the custodial portion of his sentence was 144 months or less. In return, the government agreed to

---

[1] Where appropriate, the court cites filings from the underlying criminal proceeding, using the designation "CR."

dismiss Counts 3 and 4, which was significant because Count 4 carried a mandatory minimum penalty of 15 years of incarceration and a maximum of 30 years in prison. The government further agreed to recommend a custodial sentence of 12 years in prison, while Olson was free to argue for any lawful sentence.

During the plea hearing, the court asked Olson to describe the charges filed against him. Under oath, Olson responded "I coerced my daughter into sending me a video and three pictures of herself." (CR (dkt. #153) 6.) The court stated that Count 2 was more specific in that "you're charged with knowingly receiving visual depictions involving the use of a minor engaged in sexually explicit conduct, in particular, images and a video file of KV engaging in sexually explicit acts that were received at an email account, 1tagaol1@gmail, and at your Snapchat account, tagaol." (*Id.*) After Olson indicated that he understood the specific charge to which he was pleading guilty, and the statutory minimum and maximum penalties that would apply, the court continued with the colloquy consistent with Federal Rule of Criminal Procedure 11 regarding the rights he was waiving by pleading guilty, and the role that the sentencing guidelines might have on his sentence.

Next, the government summarized the terms of the plea agreement, and Olson agreed the terms described were not only accurately summarized, but that there were no other promises, nor threats or force used against him to obtain his guilty plea. The government then provided the written factual basis to support the plea, which was filed under seal after Olson initialed each paragraph. (CR (dkt. #111).) Olson also confirmed during the plea hearing that he had initialed each paragraph, and as for Count 2 in particular, he had received on his cell phone, at an email address he created and used, three

digital images and a video clip from a minor female.  Specifically, the latter was described as a recording made within six inches of the minor female's unclothed pubic area while she masturbated.  The factual summary also stated that Olson brought this conduct to the attention of law enforcement.

The factual basis further described the two images charged in Count 1:  one image appearing to be a still shot from the video charged in Count 2; and the second described as "an unclothed minor female standing . . . with one leg lifted up in the air . . . so that her pubic region is visible without obstruction." (*Id.* at 1.)  The images in Count 1 each included sexually explicit words ("so sexy" and "your pussy?? Show u plz"), while Count 2 involved Olson receiving three similar images to those charged in Count 1, but without the sexually explicit commentary on the images.

After finding the factual showing was sufficient to find the defendant guilty beyond a reasonable doubt, the court asked Olson to describe what he did in his own words, to which he responded:  "I coerced my daughter into sending me three naked pictures of herself and a video of her masturbating." (CR (dkt. #153) 20.)  The court also asked Olson to clarify whether his daughter knew that it was him requesting the videos and pictures, and Olson confirmed that she was unaware that it was him.  The court further clarified that Olson used his accounts to encourage his daughter to send him the child pornography.

### B. Sentencing

Prior to sentencing, Olson's counsel filed objections to the presentence report, as well as a sentencing memorandum.  In the sentencing memorandum, defense counsel

4

argued that Olson's intent was well-meaning albeit completely inappropriate, having genuinely believed that his daughter was distributing sexual images of herself and wanting to stop her from continuing that conduct.  His counsel argued that a term of imprisonment no longer than 66 months would adequately punish his criminal conduct and protect the public, explaining that by far the greatest punishment to Olson is the loss of contact with his children and other family members.  Defense counsel further emphasized the challenges Olson was facing in prison, where his life was threatened regularly and he was facing health issues due to his age and a pre-existing injury.  Counsel also expressed that Olson had finally come to terms with the motivations driving his behavior, and he was ready for AODA and sexually offender treatment, citing the results of a psychologist, Dr. Yackovich, who evaluated him to assess his risk for future sexual misbehavior.

At sentencing, the court calculated Olson's advisory guidelines range at 235-293 months in prison, capped at 240 months to reflect the 20-year statutory maximum for Count 2.  Consistent with Federal Rule of Criminal Procedure 32, the court also gave counsel for both sides and the defendant a chance to speak, along with the victim.

In rendering its sentence, the court noted that Olson had accumulated 15 adult convictions and multiple periods of incarceration, finding that his record showed Olson's disregard for the law and lack of consideration for his own and others' safety.  As for the conviction of Count 2, the court noted multiple aggravating factors, including: (1) Olson's relationship to the victim and his use of threats to coerce her, as well as his use of a false identity to communicate with her; (2) his distribution of those images to a stranger; (3) the credible reports of past, inappropriate conduct by defendant involving other children;

and (4) Olson's history of blaming others and making excuses for his actions. The court also noted at least one mitigating factor in that Olson himself notified law enforcement of his misconduct. Ultimately, the court imposed a custodial sentence of 13 years. As required by statute, the court further imposed a 20-year term of supervised release. Finally, the court dismissed Counts 1, 3, 4, and 5 on the government's motion and advised Olson of his right to appeal. Although Olson did not appeal, he did file this 2255 motion.

## OPINION

Habeas "relief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under § 2255 is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). To succeed on a claim of ineffective assistance of trial counsel, Olson must show both that counsel's performance was deficient, and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Olson contends that his trial counsel was ineffective with respect to the guilty plea in failing to investigate whether: 18 U.S.C. § 2252 was unconstitutional because it lacks a criminal intent requirement; he had a defense to Count 2; the images alleged in Counts 1, 2 and 3 constituted child pornography; he had a meritorious affirmative defense as to the possession charge; and to challenge a 12-year sentence as disproportionate to other

defendants charged with possession of more images.  At sentencing, Olson further contends that his trial counsel was ineffective in failing to:  challenge the prosecution's basis for recommending a 12-year sentence; object to the use of certain visual depictions for purposes of sentencing; and object when the court imposed a 20-year term of supervised release without a separate Rule 11 colloquy.  I address these contentions below.

## I.  Guilty Plea

To prove ineffective assistance of counsel in the context of a guilty plea, Olson must show that: counsel's advice regarding the plea was objectively unreasonable; and but for counsel's error, there is a reasonable probability he would not have entered a guilty plea and instead would have gone to trial.  *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  To make such a showing, a petitioner's own testimony that he would have insisted on going to trial is not enough; rather, he must present some objective evidence that he would not have entered a guilty plea.  *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011).

Olson cites several reasons why he believes his attorney performed deficiently, much of which relates to his explanation for his behavior:  he did not intend to elicit, receive or possess pornographic images of his daughter, but was instead attempting to protect her by collecting images and turning them in to law enforcement.  Unfortunately, Olson's overarching concern about his intent with respect to his daughter has no traction in the context of his challenge to his guilty plea:  he testified under oath during his plea hearing

7

that he coerced his daughter into sending him sexually explicit content.[2] Although the court will address each of Olson's challenges to his attorney's performance at his guilty plea, this theme remains the same throughout: Olson does not show that an inquiry into his intent would have given rise to a reasonable probability that he would have taken his chances at trial.

Olson contends that his attorney failed to investigate whether he should proceed to trial instead of entering a guilty plea after Olson explained that he had been sexually abused as a child, and defense counsel misinformed him that he had no defense, causing him to enter into a guilty plea. Certainly, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Moreover, a petitioner alleging ineffective assistance of counsel due to failure to investigate must present "a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Olson has made no such showing.

Olson argues at some length about a defense based on his not having the requisite intent for a violation of 18 U.S.C. § 2252(a)(2). However, his argument is premised on

---

[2] In his reply brief, Olson raises additional challenges to his conviction and sentence, including how the presentence report was prepared for his first sentencing before Judge Crabb, the testimony from his ex-wife, and new challenges to the calculation of his guidelines range. These issues are unrelated to the proceedings before this court, and they are not properly having only been raised in reply. *See Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived.") (quotation marks and citation omitted).

an incorrect reading of the requisite proof of intent under § 2252(a)(2). Specifically, the intent requirement considers *only* whether the defendant intended to receive an image of a minor engaged in sexually explicit conduct. Here, Olson does not refute that he intended to receive the sexually explicit video of a minor as charged in Count 2. Rather, he maintains that his intent in receiving it was not for sexual purposes but to protect his daughter. While Olson argues that his attorney should have factored this motivation into an evaluation of his defense to Count 2, the reality is his motivation for receiving the image depicting a minor engaging in sexually explicit conduct is *not* an element of § 2252(a)(2), and there is no question that the government could have proven beyond a reasonable doubt that Olson's intent was to receive a video of a minor engaged in sexually explicit conduct, whatever his underlying motivation might have been. Indeed, Olson conceded as much during the plea hearing, and the stipulated facts remove any doubt as to what the government could have proven at trial. Thus, Olson has not shown how his attorney's decision not to pursue a defense that he lacked the requisite intent would have revealed a path to an acquittal, so there is no reason to find deficient performance.

Olson next contends that his attorney should have investigated whether he was guilty of *receiving* child pornography, arguing that his actual conduct was more consistent with the crime of *possession* of child pornography only, and that his attorney could have then pressed this distinction under § 2252(c)(2). However, Olson has not, and cannot show, that he was not also guilty of receiving child pornography. According to Olson, receiving the video must mean that he did not solicit it, and thus, that he could only be guilty of possession. However, Olson cites no authority for this definition of "receives"

9

under the statute; instead, he refers to cases in which courts concluded that a defendant did not possess child pornography after viewing an image on a website and not purposefully saving them. While Olson's conduct may also meet the definition of possession, he is simply incorrect that his conduct did not also meet the statutory definition of "receives."

Moreover, Olson has not explained why he would have faced his chances at trial if his attorney had investigated whether his conduct constituted possession as opposed to receipt of child pornography. In particular, aside from lacking authority for his belief that the receipt charge (Count 2) could be defeated, Olson makes no effort to show that he would have been able to defeat the charges in Counts 1, 4 or 5, and instead focuses on the fact that he might have been able to assert an affirmative defense to the possession charge (Count 3) alone. The reality is that Olson would have faced a tremendous uphill battle as to the possession charge as well. Indeed, an affirmative defense under § 2252(c) is available to a defendant who reports possession of child pornography *and* did not retain or allow any person other than law enforcement access to that content. Given that Olson admitted sending the images charged in Count 1 from his Snapchat account to another Snapchat user (*see* CR (dkt. #111) 1),[3] he would have had no legitimate basis to pursue this defense, and he again has no basis for arguing that his attorney's "failure" to pursue this convoluted line of reasoning amounted to a deficient performance.

---

[3] Olson further argues that the conduct charged in Count 2 did not involve interstate commerce because the video did not travel through interstate commerce, but in this way, the video was plainly sent to Olson to an email address and to his Snapchat account, and both services affect interstate commerce. To the extent Olson intended this argument to be another attack on his counsel's performance, her failure to raise a meritless interstate commerce argument in a motion to dismiss was plainly not deficient.

10

Next, Olson argues that his attorney performed deficiently because she told him that a 12-year sentence was "good," as opposed to investigating the sentences of other defendants who possessed many more images and distinguishing him from them (*see* dkt. #2, at 22). If anything, this contention is even less persuasive. For one, the plea agreement permitted her to argue for a lower sentence, and she requested a much lower sentence of just 66 months, well below the applicable guidelines range, as well as emphasized his rehabilitative efforts and upbringing as mitigating factors. Regardless, Olson does not say that any of the defendants he compares himself to were facing similar charges and potential sentences. Indeed, the distinction between someone who is downloading child pornography available on the internet, and soliciting his own daughter to produce child pornography is obvious.

Moreover, by virtue of the plea agreement, Olson's attorney negotiated, the government dismissed the other charges in the case. Olson does not acknowledge the risk he avoided as a result of this negotiation: had a jury found Olson guilty on Count 4 alone, he would have been subject to a 15-year mandatory minimum, and a 30-year maximum term of imprisonment. And Olson has not shown how he would have defeated any of those other charges at trial. Therefore, even if Olson's attorney referred to 12 years as "good" when they discussed his plea agreement, *and* she did not compare that offered term to other defendants found guilty of possessing more images, there is little question that she served Olson well, considering the specific and serious charges he was facing.

Olson further faults his attorney for failing to investigate whether the charged videos and images were child pornography, advising him that a jury would make that

11

determination and conclude that they were. However, Olson ignores the reason for that advice: the federal definition of pornography. Under 18 U.S.C. § 2256(2)(A)(iii) and (v), "sexually explicit conduct" is defined in part as actual or simulated masturbation or lascivious exhibition of the genitals or pubic region of any person. A lascivious exhibition "is one that draws attention to the genitals or pubic area of the subject 'in order to excite lustfulness or sexual stimulation of the viewer.'" *United States v. Schuster*, 706 F.3d 800, 807 (7th Cir. 2013) (quoting *United States v. Russell*, 662 F.3d 831, 834 (7th Cir. 2011)). Olson cannot show that his attorney performed deficiently in opining that the images charged in Counts 1 and 2 would be found to meet the federal definition of sexually explicit conduct. They did.

Nor does he offer any basis for argue otherwise, having stipulated that: the video charged in Count 2 and one of the images in Count 1 depict a minor engaging in masturbation; and the second image in Count 1 shows a nude minor with her leg positioned in a way to graphically display a close up of her entire pubic region and includes sexually explicit words across the image. Count 2 included similar images, albeit without that language. Olson does not begin to explain how he would have been able to persuade a jury that these images did not show a minor engaged in masturbation or lascivious exhibition of the pubic region. In short, his attorney had ample reasons not to object to the charges by arguing the images did not satisfy the definition of § 2256(2)(A)(iii) or (v), and advising her client that a jury would so find.

Finally, Olson faults his attorney for failing to challenge the constitutionality of § 2252(a)(2) on the ground that it does not include a scienter element. To succeed on a

claim of ineffective assistance of counsel based upon failure to file motions, a petitioner must demonstrate not only that there was a reasonable probability that he would have prevailed on the motion but also a reasonable probability that had the motion been successful, he would have been acquitted. *See Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017); *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009) ("Under *Strickland*, a defendant must prove that there is a reasonable probability that, but for his lawyer's mistakes, the result of the proceedings would have been different"). Olson cannot show either on this record.

Olson suggests that the statute punishes innocent conduct because it does not contain a scienter requirement. Of course, even Olson is not arguing there is no intent requirement. Rather, his position is that the proper interpretation of the requisite intent for his conduct should have been *why* he received the sexually explicit content, because otherwise he did nothing wrong. However, Congress decided what level of intent is appropriate for a criminal offense, and here, Congress requires the government to prove only that the defendant knew (1) he was receiving sexually explicit content and (2) the age of the individual or individuals depicted in the content. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994). Olson has not cited any authority supporting his position that § 2252(a)(2) requires an additional intent requirement, nor is this court aware of any.[4] So, his attorney did not perform deficiently in failing to challenge the constitutionality of

---

[4] Of course, the fact that Olson may not have known or believed his conduct was illegal is also not a defense to violating this statute. *See United States v. Knox*, 32 F.3d 733, 754 (3d Cir. 1994) ("[T]o fulfill the knowledge element of § 2252, a defendant simply must be aware of the general nature and character of the material and need not know that the portrayals are illegal.").

the statute for the same reason that she did not perform deficiently in failing to explore Olson's explanation for his behavior: it was not relevant to his commission of the crime charged.

## II. Sentencing

Olson also challenges three aspects of the sentencing proceedings, none of which suggest deficient performance. First, he faults his attorney for failing to challenge certain images that he describes as "non child pornography images and videos in the indictment." Whether Olson is referring to the images and videos charged in Count 1 or 2 is unclear but if he is, this argument fails, as already explained, because Olson has not explained how those images fail to meet the specific definition of sexually explicit conduct. To the extent Olson is referring to other images, he does not develop that argument in a meaningful way, so there is no basis to find that his attorney performed deficiently in failing to object to their consideration at sentencing.

Olson next faults his attorney because the court did not engage in a Rule 11 colloquy during sentencing before imposing the 20-year term of supervised release. However, Rule 11 does not apply at the sentencing phase; instead, Rule 32 applies, and the court followed that rule to the letter. In any event, the plea agreement acknowledges that Olson was subject to a lifetime term of supervised release. Finally, Olson argues that his attorney should have objected when the prosecution stated that it was recommending 12 years to avoid having the victim testify, apparently because the prosecution had earlier stated it was recommending that period of incarceration due to Olson's acceptance of responsibility. However, the government actually represented that the 12-year agreement was made in

part out of concern for the victim *and* the government took the position that Olson accepted responsibility. Olson has not explained what basis his attorney had to object to this perceived discrepancy, and his attorney certainly did not perform deficiently at sentencing by failing to raise it.

Although unnecessary, the court finds in closing that Olson has not come close to showing his attorney's performance prejudiced him. Rather, the thrust of his motion is that he *believes* that the law should be different than it is, and he wanted to take that theory of defense to trial. Absent some feasible path forward that would have made a trial a reasonable choice for Olson, his prejudice argument falls flat. Accordingly, the court will deny Olson's motion and dismiss his matter.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). For all the reasons just discussed, Olson has not made such a showing. Therefore, a certificate of appealability will not issue. Olson may seek a certificate from the Court of Appeals for the Seventh Circuit under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Ricky Olson's motion to rule (dkt. #5) is DENIED as moot.

2. Olson's motion to vacate (dkt. #1) is DENIED and his petition is DISMISSED.

3. No certificate of appealability shall issue.

Entered this 16th day of March, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge